1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRUCE INMAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>S. ANDERSON, et al.,<br><br>                    Defendants. | Case No. 17-CV-04470-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS; GRANTING CITY DEFENDANTS' MOTION TO DISMISS; AND DENYING CITY DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT**<br><br>Re: Dkt. Nos. 43, 45 |

Plaintiff Bruce Inman ("Plaintiff") filed an amended civil rights complaint against

Defendants S. Anderson ("Officer Anderson"), Guillermo Vasquez ("Officer Vasquez"), Dana

Rannals ("Officer Rannals"), Pedro Zamora ("Officer Zamora"), Leo Moreno ("Officer Moreno"),

the City of Capitola, Steven J. Moore ("ADA Moore"), and the County of Santa Cruz

(collectively, "Defendants"). In his amended complaint, Plaintiff asserts five causes of action

arising out of his arrest, investigation, and prosecution for allegedly annoying or molesting a child

in violation of California Penal Code § 647.6(a). On November 17, 2017, ADA Moore and the

County of Santa Cruz (collectively, the "County Defendants") filed a motion to dismiss the

1

Case No. 17-CV-04470-LHK
ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS;
GRANTING CITY DEFENDANTS' MOTION TO DISMISS; AND DENYING CITY DEFENDANTS' MOTION
FOR A MORE DEFINITE STATEMENT

amended complaint. ECF No. 43 ("County Mot."). On the same day, Officer Anderson, Officer Vasquez, Officer Zamora, Officer Moreno (collectively, the "City Officers"), along with the City of Capitola (collectively, the "City Defendants") moved (1) to dismiss the amended complaint; and (2) for a more definite statement.[1] ECF No. 45 ("City Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby (1) GRANTS in part and DENIES in part the County Defendants' motion to dismiss; (2) GRANTS the City Defendants' motion to dismiss; and (3) DENIES the City Defendants' motion for a more definite statement.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a resident of the County of Santa Cruz (the "County"). ECF No. 24 ("FAC") ¶ 3. At all times relevant to the instant case, Officers Anderson, Vasquez, Rannals, Zamora, and Moreno were police officers employed by the City of Capitola (the "City"), and ADA Moore was an Assistant District Attorney employed by the County. *See id.* ¶¶ 4–5.

Plaintiff alleges that on August 9, 2015, Plaintiff was taking photographs in and around the beach of Capitola" when he was "approached in an extremely belligerent manner" by Officers Vasquez and Zamora. *Id.* ¶¶ 7–8. Plaintiff states that, despite not having a search warrant, Officers Vasquez and Zamora demanded Plaintiff to "turn over his camera to them." *Id.* ¶ 8. Plaintiff further alleges that after Plaintiff "reluctantly" gave the officers his camera, the officers "arrested [P]laintiff for allegedly taking photographs of a minor without her permission." *Id.* ¶¶ 8–9. Specifically, Officers Vasquez and Zamora handcuffed Plaintiff and transported Plaintiff to

---

[1] Although Plaintiff's amended complaint names Officer Rannals as a defendant, in their motion to dismiss and for a more definite statement, the City Defendants explain that Officer Rannals is currently "serving overseas in the United States Army Reserve" and thus "has not been served with Plaintiff's Complaint." City Mot. at 3 n.1. Further, the City Defendants state that "the City has not agreed to accept service on Mr. Rannals' behalf." *Id.* As a result, Officer Rannals is not a moving defendant, and is therefore not referred to as one of the "City Officers" or "City Defendants" in this order.

the County jail, where Plaintiff "was booked, fingerprinted, forced to pose for mug shots and incarcerated." *Id.* ¶ 10. Plaintiff alleges that Officers Anderson, Vasquez, Rannals, Zamora, and Moreno "were all involved in the false arrest and incarceration of [P]laintiff." *Id.*

Plaintiff states that he "later discovered that he had been arrested for a violation of [California Penal Code §] 647.6(a)." *Id.* Specifically, Plaintiff states that "[a]s it turns out, one of the subjects of [P]laintiff's photographs was a minor who was at the beach that day posing for photographs." *Id.* Further, when the minor was approached by Officers Vasquez and Zamora, the minor "told them that she was totally unaware of [P]laintiff or his taking photographs of her." *Id.* Moreover, sometime "[a]fter [P]laintiff's arrest, the alleged victim was shown a photo lineup of 6 individuals including [P]laintiff," but was "unable to identify anyone." *Id.* ¶ 14.

After Plaintiff posted bail and was released, ADA Moore "continued to prosecute [P]laintiff for some 9 months . . . even though there was no evidence upon which to prosecute [P]laintiff." *Id.* ¶¶ 11, 13. Plaintiff states that he "is informed and believes and alleges thereon that" the City Officers "conspired with [ADA] Moore to present false incriminating evidence to the court." *Id.* 13. Specifically, Plaintiff alleges that after the alleged victim failed to identify anyone from the photo lineup, Officers Anderson, Vasquez, Rannals, Zamora, and Moreno and ADA Moore "presented a false and misleading probable cause statement to a judge requesting a search warrant for [P]laintiff's home." *Id.* ¶ 15. Plaintiff further alleges that his computer and "other supposed possible incriminating evidence" was seized pursuant to the search warrant, but that "no incriminating evidence whatsoever" was found. *Id.*

Then, after "9 months of persecution," "the charge against [P]laintiff was dismissed by a Superior Court Judge." *Id.* ¶ 16. Plaintiff alleges that the judge ordered ADA Moore to "return all of [P]laintiff's possessions that had been seized." *Id.* ¶ 17. However, Plaintiff states that ADA Moore "refused to return [P]laintiff's camera and computer, and told [P]laintiff that if he was going to return the camera, he was going to destroy the photos, thereby eliminating the evidence [P]laintiff would require in order to hold the defendants[] responsible for their unlawful acts." *Id.*

3

Plaintiff says that "Defendants have still not returned [P]laintiff's camera and other seized items." *Id.* ¶ 18.

### B. Procedural History

On August 6, 2017, Plaintiff filed his original complaint along with an application for leave to proceed in forma pauperis ("IFP"). ECF Nos. 1 & 2. Plaintiff's original complaint asserted five causes of action, including (1) "unlawful search, seizure, arrest" in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983 (asserted against all Defendants); (2) "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (asserted against all Defendants); (3) a *Monell* claim against the County based on ADA Moore's investigative policies, pursuant to 42 U.S.C. § 1983; (4) a *Monell* claim against the City, pursuant to 42 U.S.C. § 1983; and (5) violation of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1 (asserted against all Defendants). *See* ECF No. 1.

On September 18, 2017, United States Magistrate Judge Nathanael Cousins granted Plaintiff's IFP application. ECF No. 13. Then, on September 20, 2017, Judge Cousins conducted a sua sponte review of Plaintiff's original complaint pursuant to 28 U.S.C. § 1915 and dismissed Plaintiff's fourth cause of action for *Monell* liability against the City with leave to amend. ECF No. 22. On October 4, 2017, Plaintiff filed a first amended complaint ("FAC"). *See* FAC. Plaintiff's FAC asserts the same five causes of action as Plaintiff's original complaint. *See id.*

Then, on October 4, 2017, the County declined magistrate judge jurisdiction. ECF No. 26. As a result, this case was reassigned to the undersigned judge. ECF No. 28.

On November 17, 2017, the County Defendants filed a motion to dismiss Plaintiff's FAC, *see* County Mot., and the City Defendants filed a motion to dismiss Plaintiff's FAC and for a more definite statement. *See* City Mot. On December 22, 2017, Plaintiff opposed both motions. *See* ECF No. 47 ("Opp. County"); ECF No. 48 ("Opp. City"). Then, on January 11, 2018, both the County Defendants and the City Defendants replied. *See* ECF No. 49 ("County Reply"); ECF No.

Case No. 17-CV-04470-LHK
ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS; GRANTING CITY DEFENDANTS' MOTION TO DISMISS; AND DENYING CITY DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT

United States District Court
Northern District of California

50 ("City Reply").

## II.   LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

5

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## C. Motion for a More Definite Statement Under Rule 12(e)

Under Rule 12(e), a party may move for a more definite statement with respect to a complaint that "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ.P. 12(e); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (stating that, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding"). A Rule 12(e) motion may be granted, for example, "where the complaint is so general that ambiguity arises in determining the nature of the claim." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal.1994). The Ninth Circuit has expressly held that, "even though a complaint is not defective for failure to designate the statute or other provision of law violated, [a court] may in [its] discretion, in response to a motion for more definite statement under Federal Rule of Civil Procedure 12(e), require such detail as may be appropriate in the particular case, and may dismiss the complaint if [its] order is violated." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Motions pursuant to Rule 12(e) are generally "viewed with disfavor and are rarely granted[.]"

*E.E.O.C. v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. 2012).

## III. DISCUSSION

As explained above, the County Defendants filed a motion to dismiss Plaintiff's FAC, *see* County Mot.*,* and the City Defendants filed a motion to dismiss Plaintiff's FAC and for a more definite statement. *See* City Mot. The Court addresses each motion in turn.

### A. County Defendants' Motion

In their motion, the County Defendants move to dismiss every cause of action asserted against either ADA Moore or the County. Thus, both County Defendants move to dismiss (1) the first cause of action, which is for "unlawful search, seizure, arrest" in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983; (2) the second cause of action, which is for "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; and (3) the fifth cause of action, which is for violation of the Bane Act. County Mot. at 5–14, 16. Further, the County moves to dismiss the third cause of action, which is Plaintiff's *Monell* claim against the County. *Id.* at 6, 14–16.

The Court first addresses Plaintiff's first and second causes of action for "unlawful search seizure, arrest" and "conspiracy to seize the person and deny substantive due process" as they pertain to the County Defendants. Then, the Court addresses Plaintiff's *Monell* claim against the County. Finally, the Court addresses Plaintiff's Bane Act claim as it pertains to the County Defendants.

#### 1. Plaintiff's First and Second Causes of Action Against the County Defendants

Although Plaintiff's FAC states that his first cause of action is for "unlawful search, seizure, arrest" in violation of the Fourth Amendment, FAC at 5, and that his second cause of action is for "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments, *id.*, the Court notes that the FAC does not specify which of the County Defendants' actions amount to "unlawful search, seizure, [and] arrest," and which of the County Defendants' actions amount to "conspiracy to seize the person and deny substantive

7

due process." However, construing the allegations in the FAC that are "common to all claims" in Plaintiff's favor, *id.* at 3, the Court deduces that Plaintiff's first cause of action against the County Defendants can be based on at most two aspects of ADA Moore's alleged conduct: (1) ADA Moore's continued prosecution of Plaintiff "for some 9 months . . . even though there was no evidence upon which to prosecute [P]laintiff," *id.* ¶ 13; and (2) ADA Moore's alleged refusal to return Plaintiff's camera and computer after a judge dismissed the criminal charge against Plaintiff and ordered ADA Moore to "return all of [P]laintiff's possessions that had been seized." *Id.* ¶ 17. Further, the Court surmises that Plaintiff's second cause of action for "conspiracy to seize the person and deny substantive due process" against the County Defendants must be based on ADA Moore's alleged participation in a conspiracy with the City Officers "to present false incriminating evidence to the court," in the form of a "false and misleading probable cause statement . . . requesting a search warrant for [P]laintiff's home." *Id.* ¶¶ 13, 15.

The Court first addresses Plaintiff's first cause of action as it pertains to ADA Moore. Second, the Court addresses Plaintiff's second cause of action as it pertains to ADA Moore. Third and finally, the Court addresses Plaintiff's first and second causes of action as they pertain to the County.

### a. First Cause of Action Against ADA Moore

As explained above, Plaintiff's first cause of action appears to assert that ADA Moore violated Plaintiff's Fourth Amendment rights by (1) continuing to prosecute Plaintiff for 9 months "even though there was no evidence" to support the prosecution, *id.* ¶ 13; and (2) failing to return property seized from Plaintiff after the criminal charge against Plaintiff was dismissed and the judge ordered ADA Moore to return the property to Plaintiff. *Id.* ¶ 17. In the County Defendants' motion to dismiss, ADA Moore argues that Plaintiff's first cause of action is barred by prosecutorial immunity. *See* County Mot. 5–8. ADA Moore further argues that, to the extent Plaintiff's first cause of action is based on ADA Moore's prosecution of Plaintiff without sufficient evidence, it is both insufficiently pled and barred by qualified immunity. *Id.* at 13, 16.

8

For the reasons stated below, the Court finds that ADA Moore is only half correct. Specifically, to the extent that Plaintiff's first cause of action is based on ADA Moore's prosecution of Plaintiff without sufficient evidence, it is barred by prosecutorial immunity. However, prosecutorial immunity does not bar the portion of Plaintiff's first cause of action that is based on ADA Moore's failure to return Plaintiff's property.

Claims for monetary damages against prosecutors pursuant to § 1983 may be barred by absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). This immunity applies to conduct "intimately associated with the judicial phase of the criminal process," and protects prosecutors when they perform traditional activities related to the initiation and presentation of criminal prosecutions. *Id.*; *accord Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005). Thus, prosecutorial immunity bars allegations for, among other things, malicious prosecution and conspiracy in connection with criminal prosecutions. *See, e.g.*, *Milstein v. Cooley*, 257 F.3d 1004, 1008–09 (9th Cir. 2001) (prosecutorial immunity bars claim of malicious prosecution); *Ashelman v. Pope*, 793 F.2d 1072, 1075–78 (9th Cir. 1986) (prosecutorial immunity bars claim against prosecutor alleging that prosecutor conspired with the judge to predetermine the outcome of a trial). However, prosecutorial immunity does not extend to "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley v. Fitzimmons*, 509 U.S. 259, 273 (1993). As a result, whether a prosecutor is entitled to prosecutorial immunity for particular conduct turns on whether the prosecutor was "functioning as [an] 'advocate[]'" while engaging in that conduct. *Id.* at 274.

ADA Moore's decision to initiate a criminal prosecution against Plaintiff, and his alleged insistence on continuing that prosecution for 9 months "even though there was no evidence" to support the prosecution, FAC ¶ 13, fall squarely into the category of conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Such alleged conduct is clearly intertwined with the presentation of the state's case against Plaintiff. *See id.* at

9

431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). In other words, ADA Moore was undisputedly "functioning as [an] 'advocate[]'" for the state when he continued to prosecute Plaintiff in the face of allegedly insufficient evidence to justify the prosecution. *Buckley*, 509 U.S. at 273. As a result, Plaintiff's first cause of action against ADA Moore, to the extent that it is based on ADA Moore's alleged prosecution of Plaintiff without sufficient evidence, is barred by prosecutorial immunity. Indeed, Plaintiff's challenge to ADA Moore's continued prosecution of Plaintiff without sufficient evidence is akin to a malicious prosecution claim, and it is well-established that malicious prosecution claims against a prosecutor pursuant to § 1983 are barred by prosecutorial immunity. *Milstein*, 257 F.3d at 1008–09; *see Zendejas v. Cty. of L.A.*, 2010 WL 4537090, *5 (C.D. Cal. Nov. 1, 2010) ("[F]or a malicious prosecution claim under the Fourth Amendment, a plaintiff must prove prosecution without probable cause.").

In contrast, ADA Moore's alleged failure to return Plaintiff's property after the criminal charge against Plaintiff was dismissed does not appear to amount to conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Instead, once the criminal charges against a defendant are dismissed, "disposal of property held as evidence during the pendency of [the prosecution] is clearly an administrative function of prosecutors for which absolute immunity does not lie." *Bushouse v. Kalamazoo Cty.*, 93 F.R.D. 881, 884 (W.D. Mich. 1982). Indeed, Plaintiff's allegation that the state court judge ordered ADA Moore to return Plaintiff's property to Plaintiff—which the Court must accept as true for purposes of the instant motion—further reinforces the conclusion that ADA Moore's failure to return Plaintiff's property appears to have been unrelated to any ongoing criminal proceedings against Plaintiff. *See Imbler*, 424 U.S. at 431. Although ADA Moore may eventually be able to demonstrate that he is entitled to prosecutorial immunity for his retention of Plaintiff's property because he was "functioning as [an] 'advocate[]'" in retaining Plaintiff's property, *Buckley*, 509 U.S. at 274, at this stage of the proceedings, and in light of Plaintiff's allegations, the Court cannot conclude that ADA Moore is

10

United States District Court
Northern District of California

entitled to prosecutorial immunity for this portion of Plaintiff's first cause of action.

Because prosecutorial immunity bars the portion of Plaintiff's first cause of action that is based on ADA Moore's continued prosecution of Plaintiff without sufficient evidence, the Court GRANTS ADA Moore's motion to dismiss that portion of Plaintiff's first cause of action. Moreover, where prosecutorial immunity bars a plaintiff's claim, the deficiencies in that claim cannot be cured by amendment. *See Dei Gratia v. Stafford*, 2015 WL 332633, *8 (N.D. Cal. Jan. 23, 2015) ("Moreover where, as here, prosecutorial and judicial immunity bar a plaintiff's claims, those deficiencies cannot be cured by amendment."). Therefore, the Court dismisses the portion of Plaintiff's first cause of action that is barred by prosecutorial immunity without leave to amend.[2]

However, as explained above, the Court cannot conclude at this stage of the proceedings that prosecutorial immunity bars the portion of Plaintiff's first cause of action that is based on ADA Moore's retention of Plaintiff's property. Further, ADA Moore's motion to dismiss presents no other grounds for dismissing this portion of Plaintiff's first cause of action. Therefore, the Court DENIES ADA Moore's motion to dismiss the portion of Plaintiff's first cause of action that is based on ADA Moore's retention of Plaintiff's property.

### b. Second Cause of Action Against ADA Moore

As discussed above, Plaintiff's second cause of action for "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments, as it pertains to ADA Moore, appears to be based on ADA Moore's alleged participation in a conspiracy with the City Officers to present a "false and misleading probable cause statement . . . requesting a search warrant for [P]laintiff's home." FAC ¶¶ 13, 15. In the County Defendants' motion to dismiss, ADA Moore argues that Plaintiff's second cause of action is barred by

---

[2] Because the Court dismisses this portion of Plaintiff's first cause of action without leave to amend, the Court need not address ADA Moore's argument that this portion of Plaintiff's first cause of action is both insufficiently pled and barred by qualified immunity. *See* County Mot. at 13, 16.

11

prosecutorial immunity. *See* County Mot. 5–8. ADA Moore further argues that Plaintiff's second cause of action "fails to sufficiently allege [that ADA Moore] conspired against" Plaintiff and "fails to demonstrate [that ADA] Moore made false and misleading statements." *Id.* at 10–12.

The Court agrees with ADA Moore that Plaintiff's second cause of action, as it pertains to ADA Moore, is barred by prosecutorial immunity. In *Burns v. Reed*, 500 U.S. 478 (1991), the United States Supreme Court held that a prosecutor who knowingly presented misleading evidence in moving for a warrant to search a suspect's house and car *after* that suspect had been arrested was entitled to prosecutorial immunity because (1) "appearing before a judge and presenting evidence in support of a motion for a search warrant" "clearly involve[s] the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer,'" *id.* at 491 (quoting *Imbler*, 424 U.S. at 430–31 & n.3); (2) "appearing at a probable-cause hearing is 'intimately associated with the judicial phase of the criminal process'" because "the issuance of a search warrant is unquestionably a judicial act," *id.* at 492 (quoting *Imbler*, 424 U.S. at 430); and (3) "where [a probable cause] hearing occurs after arrest," appearing at that hearing is "connected with the initiation and conduct of a prosecution." *Id.* More generally, courts have recognized that after a prosecution has been initiated against a specific defendant, prosecutorial immunity attaches to any alleged fabrication of evidence or presentation of that fabricated evidence by a prosecutor in support of the state's case against the defendant. *See Hill v. City of New York*, 45 F.3d 653, 660–62 (2d Cir. 1995) (holding that a prosecutor's alleged use of false evidence and withholding of exculpatory evidence at a grand jury proceeding was entitled to prosecutorial immunity); *Bhatia v. Gaetano*, 2008 WL 901491, *3 (D. Conn. Mar. 31, 2008) ("To the extent that Bhatia alleges that Gaetano fabricated evidence in order to aide in a prosecution that had already been initiated, absolute immunity attaches.").

In the instant case, according to Plaintiff's allegations, the alleged conspiracy to present a "false and misleading probable cause statement" in support of a warrant to search Plaintiff's home took place *after* Plaintiff was arrested for annoying or molesting a child in violation of California

12

Penal Code § 647.6(a). *See* FAC ¶ 15. Thus, under *Burns*, whatever actions ADA Moore took to further that conspiracy were "connected with the initiation and conduct of a prosecution" against Plaintiff, and also "clearly involved [ADA Moore's] 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" 500 U.S. at 491–92. In other words, because ADA Moore did not allegedly conspire to present a false and misleading probable cause statement in support of a search warrant until after Plaintiff was arrested, even if ADA Moore did in fact participate in such a conspiracy, he necessarily did so "in order to aide in a prosecution that had already been initiated" against Plaintiff. *Bhatia*, 2008 WL 901491 at *3. As a result, although ADA Moore's alleged conduct, if true, is troubling, ADA Moore was undoubtedly "functioning as [an] 'advocate[]'" for the state when he allegedly conspired to present a false probable cause statement in support of a warrant to search Plaintiff's home. *Buckley*, 509 U.S. at 274. Therefore, Plaintiff's second cause of action against ADA Moore is barred by prosecutorial immunity.

As a result, the Court GRANTS ADA Moore's motion to dismiss Plaintiff's second cause of action. Further, because the deficiencies in a claim barred by prosecutorial immunity cannot be cured by amendment, *see Dei Gratia*, 2015 WL 332633 at *8, the Court dismisses Plaintiff's second cause of action against ADA Moore without leave to amend.[3]

### c. First and Second Causes of Action Against the County

As a general rule, when a pleading fails "to allege what role each Defendant played in the alleged harm," this "makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *In re iPhone Application Litig.*, 2011 WL 4403963, *8 (N.D. Cal. Sept. 20, 2011); *see also Gen–Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (stating "confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an FAC"). Accordingly, a complaint that "lump[s]

---

[3] Because the Court dismisses Plaintiff's second cause of action against ADA Moore without leave to amend, the Court need not address ADA Moore's other arguments for dismissal of Plaintiff's second cause of action. *See* County Mot. at 10–12.

13

together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen–Probe*, 926 F. Supp. at 961 (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

Although Plaintiff asserts his first and second causes of action against "All Defendants," FAC at 5, the allegations contained in or referenced by Plaintiff's first and second causes of action focus exclusively on actions taken by ADA Moore, who is an employee of the County, and by the City Officers, who are not alleged to be agents or employees of the County. *See id.* ¶¶ 8–10, 13, 15, 17. Thus, Plaintiff's FAC contains no allegations that tie the first and second causes of action to the *County's* own conduct—it includes only allegations about the conduct of one of the County's employees. This is significant in light of the well-established rule that a local government may not be sued under a theory of respondeat superior for injuries inflicted by its employees or agents. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Further, the Court notes that although Plaintiff's first and second causes of action contain no allegations suggesting that the actions taken by ADA Moore "implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the County's] officers," *id.*, such allegations *are* contained in Plaintiff's third cause of action, which is a *Monell* claim against the County. *See* FAC ¶¶ 25–31.

As a result, Plaintiff's first and second causes of action appear to lump the County with other defendants in a way that violates the notice requirement of Federal Rule of Civil Procedure 8(a)(2). Thus, because the Court must construe the FAC in the light most favorable to Plaintiff in ruling on a motion to dismiss, and because Plaintiff's third cause of action already raises a *Monell* claim against the County, the Court reads the FAC to include the County as a defendant in Plaintiff's third cause of action, but not in Plaintiff's first and second causes of action. If Plaintiff

14

wishes to assert his first and second causes of action against the County as claims that are separate from his third cause of action, Plaintiff must do so in a second amended complaint in a way that complies with both Rule 8 and *Monell*.

### 2. Plaintiff's *Monell* Claim Against the County

As discussed above, Plaintiff's third cause of action is a *Monell* claim against the County. In the County Defendants' motion to dismiss, the County argues that Plaintiff has failed to adequately plead a *Monell* claim against the County. County Mot. at 13–14. For the reasons stated below, the Court agrees with the County.

Under *Monell*, a plaintiff may establish municipal liability by demonstrating that "1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). Additionally, in "limited circumstances," the failure to train municipal employees can serve as the policy underlying a *Monell* claim. *Bd. Of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

Moreover, a plaintiff must demonstrate that the government's official policy or custom was the "moving force" responsible for the infliction of the plaintiff's injuries. *Monell*, 436 U.S. at 694. "A policy or custom is considered a 'moving force' behind a constitutional violation if both causation-in-fact and proximate causation can be established." *Palm v. L.A. Dep't of Water & Power*, 2015 WL 4065087, *2 (C.D. Cal. July 2, 2015) (citing *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Previously, the Ninth Circuit held that "[i]n this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). However,

15

"[t]he Ninth Circuit has made clear that claims of *Monell* liability must now comply with the basic principles set forth in *Twombly* and *Iqbal*: (1) the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and (2) the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E.*, 666 F.3d at 636–37 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Plaintiff's FAC alleges additional facts in support of Plaintiff's *Monell* claim against the County. Specifically, for purposes of Plaintiff's *Monell* claim against the County, Plaintiff alleges that "[a]t all relevant times [ADA] Moore was the person with final authority to establish local government entity policy with respect to law enforcement in the particular area of investigation of crime." FAC ¶ 26. Plaintiff also states that ADA Moore "made deliberate choices with respect to the final actions ordered in the investigation false charges [*sic*] against plaintiff and had de facto authority to set policy as to the investigation." *Id.* ¶ 27. Further, Plaintiff cryptically alleges that "[t]he actions of [ADA] Moore in leading the investigation were: Pursuant to 'custom or usage having the force of law,' and [n]ot subject to meaningful review," and that ADA Moore "acted in an administrative role setting policy as to how to conduct investigations and as such was a County policymaker." *Id.* ¶¶ 28–29. Then, Plaintiff states that the "County was therefore the moving force behind Plaintiff's damages." *Id.* ¶ 30. Finally, and puzzlingly, although the County of Santa Cruz is the only county mentioned elsewhere in the FAC, Plaintiff alleges that "Defendant Lincoln County is liable for all of Plaintiff's compensatory damages herein." *Id.* ¶ 31.

Although Plaintiff's allegations in support of Plaintiff's *Monell* claim against the County appear to challenge some aspect of the *investigation* of Plaintiff, the allegations are lacking in clarity, precision, and detail. As noted above, *Monell* liability only attaches where (1) the alleged constitutional tort resulted from a municipality's custom, policy, or practice; (2) the tortfeasor was an official "whose acts fairly represent official policy such that the challenged action constituted

16

official policy"; (3) an official with policymaking authority ratified the tortfeasor's actions; or (4) the municipality failed to adequately train the tortfeasors. *Price*, 513 F.3d at 966; *Brown*, 520 U.S. at 400. Unfortunately, Plaintiff's *Monell* allegations do not clearly indicate which of these four theories of *Monell* liability Plaintiff seeks to employ against the County. However, construing Plaintiff's *Monell* claim against the County broadly and in light of the factual allegations common to all of Plaintiff's claims, *see* FAC ¶¶ 7–18, the Court surmises that Plaintiff may be operating under either the first or the second theory of *Monell* liability. Specifically, Plaintiff may be utilizing the first theory of *Monell* liability to assert that the City Officers' allegedly unconstitutional pre-arrest search and arrest of Plaintiff resulted from the City Officers' adherence to the County's investigatory policy, as established by ADA Moore. Alternatively, Plaintiff may be utilizing the second theory of *Monell* liability to assert that the allegedly unconstitutional "investigatory" actions taken by ADA Moore after Plaintiff was arrested up until the criminal charge against Plaintiff was dismissed amounted to "official [County] policy" because ADA Moore "was an official whose acts fairly represent[ed] official policy." *Price*, 513 F.3d at 966.

Plaintiff's *Monell* claim against the County fails under either theory. First, as to the theory that the City Officers' allegedly unconstitutional search and arrest of Plaintiff resulted from adherence to the County's investigatory policy set by ADA Moore, the Court finds that Plaintiff's FAC fails to adequately allege the existence and content of the investigatory policy. Since *A.E.* and *Starr*, the allegations concerning the existence and content of a policy must satisfy the requirements of *Iqbal*. As discussed above, the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E.*, 666 F.3d at 636–37 (quoting *Starr*, 652 F.3d at 1216).

Multiple courts have applied this standard in the *Monell* context and found vague assertions of municipal policies to be insufficient. For example, in *A.E.*, the Ninth Circuit found that the plaintiff had inadequately alleged a municipal policy because Plaintiff merely alleged that the county was liable under *Monell* because the officer "performed all acts and omissions . . . under the ordinances, regulations, customs, and practices of [the county]" and the county "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint. *Id.* at 637; *see also Mendy v. City of Fremont*, 2014 WL 574599, at *3 (N.D. Cal. Feb. 12, 2014) (dismissing municipal liability claim based on unsupported allegation of an "informal custom or policy that tolerates and promotes the continued use of excessive force and cruel and unusual punishment against and violation of civil rights of citizens by City police officers in the manner alleged [elsewhere in the complaint]"); *cf. Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013) (concluding that plaintiffs' *Monell* allegations were sufficient because they "specif[ied] the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' constitutional injuries.").

The allegations in support of Plaintiff's *Monell* claim against the County are even vaguer than those in *A.E.* and *Mendy*. Plaintiff's FAC alleges only that ADA Moore set investigatory policy for the County, that ADA Moore "made deliberate choices with respect to the final actions ordered in the investigation" of Plaintiff, and that the County was "the moving force behind Plaintiff's damages." FAC ¶¶ 26–27, 29–30. Thus, Plaintiff's FAC is completely devoid of any facts or details about the actual content of the investigatory policy that purportedly was the "moving force" behind the alleged constitutional injuries that Plaintiff suffered at the hands of the City Officers. As a result, Plaintiff has provided insufficient detail under *A.E.* to state a claim based on whatever investigatory policy the City Officers may have executed in searching and arresting Plaintiff. *See Mateos-Sandoval*, 942 F. Supp. 2d at 899 (requiring the complaint to "specify the content of the policies, customs, or practices the execution of which gave rise to

18

Plaintiffs' constitutional injuries").

Second, as to the theory that the allegedly unconstitutional "investigatory" actions taken by ADA Moore after Plaintiff was arrested up until Plaintiff's criminal charge was dismissed amounted to "official [County] policy," *Price*, 513 F.3d at 966, the Court finds that Plaintiff's FAC fails to state a *Monell* claim against the County based on such a theory because ADA Moore could not have been acting as a County policymaker when he took those allegedly unconstitutional "investigatory" actions. Under California law, "district attorneys are state officers for the purpose of investigating and proceeding with criminal prosecutions." *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1030 (9th Cir, 2000). The only "investigatory" action taken by ADA Moore, as alleged in the FAC, was ADA Moore's purported participation in a conspiracy with the City Officers to present a false and misleading probable cause statement in support of a warrant to search Plaintiff's home. *See* FAC ¶¶ 13, 15. However, because the alleged conspiracy took place *after* Plaintiff was arrested, it is clear that ADA Moore was "investigating and proceeding with [a] criminal prosecution[]" against Plaintiff when he allegedly participated in the conspiracy. *Weiner*, 210 F.3d at 1030. As a result, under California law, ADA Moore was acting as a "state officer[]," and not as a County policymaker, when he allegedly participated in the conspiracy to "present false incriminating evidence [against Plaintiff] to the court." *Id.*; FAC ¶ 13. Thus, because the instant theory of *Monell* liability against the *County* is based solely on actions that ADA Moore took as a *state* officer, it fails as a matter of law.

Accordingly, the Court GRANTS the County's motion to dismiss Plaintiff's third cause of action. However, the Court provides leave to amend because Plaintiff may be able to allege sufficient facts to state a *Monell* claim against the County. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 3. Plaintiff's Bane Act Claim Against the County Defendants

As discussed above, Plaintiff's fifth cause of action is a claim under the Bane Act, Cal.

19

Civ. Code § 52.1. The Bane Act punishes any "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal Civ. Code § 52.1(a). The Bane Act also provides a cause of action for anyone whose rights are harmed in this way. *Id.* § 52.1(b). In order to state a claim under the Bane Act, a plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

Plaintiff asserts his Bane Act claim against "All Defendants," FAC at 8, but Plaintiff's FAC does not specify which of the County Defendants' actions allegedly violated the Bane Act. Construing the allegations in the FAC in Plaintiff's favor, the Court surmises that Plaintiff's Bane Act claim against the County Defendants can be based on at most three aspects of ADA Moore's alleged conduct: (1) ADA Moore's continued prosecution of Plaintiff "for some 9 months . . . even though there was no evidence upon which to prosecute [P]laintiff," FAC ¶ 13; (2) ADA Moore's alleged participation in a conspiracy with the City Officers "to present false incriminating evidence to the court," in the form of a "false and misleading probable cause statement . . . requesting a search warrant for [P]laintiff's home," *id.* ¶¶ 13, 15; and (3) ADA Moore's alleged refusal to return Plaintiff's camera and computer after a judge dismissed Plaintiff's criminal charge and ordered ADA Moore to "return all of [P]laintiff's possessions that had been seized," *id.* ¶ 17.

In their motion to dismiss, the County Defendants argue that they are immune from liability on Plaintiff's Bane Act claim pursuant to California Government Code § 821.6. County Mot. at 8–9. Further, the County Defendants argue that (1) Plaintiff's FAC fails to state a Bane Act claim; and (2) to the extent that Plaintiff seeks damages from the County under the Bane Act,

20

the Bane Act claim should be dismissed because Plaintiff failed to present a claim for damages to the County. *Id.* at 14–16.

The Court concludes that Plaintiff's Bane Act claim against the County Defendants should be dismissed. Specifically, to the extent that Plaintiff's Bane Act claim is premised on either ADA Moore's prosecution of Plaintiff without sufficient evidence or ADA Moore's alleged participation in a conspiracy "to present false incriminating evidence to the court," FAC ¶ 13, the Court finds that Plaintiff's Bane Act claim is barred by California Government Code § 821.6. Further, the Court finds that Plaintiff's FAC fails to state a Bane Act claim based on ADA Moore's alleged failure to return Plaintiff's property. The Court explains each finding in turn.

### a. Prosecutorial Immunity Under California Government Code § 821.6

Pursuant to California Government Code § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." California courts construe this prosecutorial immunity provision broadly "in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007). Accordingly, § 821.6 has been held to immunize actions that "are causally connected to the investigation and prosecution" of a person, including all acts that "were committed as part of an investigation of crimes leading to prosecution in a judicial proceeding"—which may include "obtaining [a search] warrant, searching, seizing, retaining, and even damaging [] property." *Cty. of L.A. v. Superior Court*, 181 Cal. App. 4th 218, 230 (2009). Further, "[t]he immunity applies even if the officers abused their authority," *id.* at 229, and extends to claims against prosecutors for suppressing exculpatory evidence. *Randle v. City & Cty. of S.F.*, 186 Cal. App. 3d 449, 455–57 (1986).

Moreover, pursuant to California Government Code § 815.2(b), "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the

21

employee is immune from liability." Thus, if a public employee is immune to a particular cause of action pursuant to California Government Code § 821.6, then § 815.2(b) ensures that the public entity that employs the public employee is immune as well.

The Court concluded above that, to the extent Plaintiff's § 1983 claims are based on either ADA Moore's prosecution of Plaintiff without sufficient evidence or ADA Moore's alleged participation in a conspiracy "to present false incriminating evidence to the court," FAC ¶ 13, they are barred by prosecutorial immunity because they are premised on conduct that was "intimately associated with the judicial phase of the criminal process." *See supra* Section III.A.1 (quoting *Imbler*, 424 U.S. at 43). Similarly, the Court finds that, to the extent Plaintiff's Bane Act claim against ADA Moore is based on the same conduct, it is barred by California Government Code § 821.6 because ADA Moore's alleged insistence on prosecuting Plaintiff without sufficient evidence and alleged participation in a conspiracy to present a false probable cause statement in support of a warrant to search Plaintiff's home after Plaintiff was arrested clearly amount to actions that were "causally connected to the investigation and prosecution" of Plaintiff. *Cty. of L.A.*, 181 Cal. App. 4th at 230. Indeed, ADA Moore's alleged participation in the conspiracy with the City Officers, if true, was undoubtedly "committed as part of an investigation of crimes leading to prosecution [of Plaintiff] in a judicial proceeding." *Id.*

Because California Government Code § 821.6 bars the portion of Plaintiff's Bane Act Claim against ADA Moore that is based on either ADA Moore's continued prosecution of Plaintiff without sufficient evidence or ADA Moore's alleged participation in a conspiracy to present false evidence against Plaintiff to a court, and because the County is therefore also immune to that portion of Plaintiff's Bane Act claim pursuant to § 815.2(b), the Court GRANTS the County Defendants' motion to dismiss that portion of Plaintiff's Bane Act claim. Moreover, where prosecutorial immunity bars a plaintiff's claim, the deficiencies in that claim cannot be cured by amendment. *See Dei Gratia*, 2015 WL 332633 at *8 ("Moreover where, as here, prosecutorial and judicial immunity bar a plaintiff's claims, those deficiencies cannot be cured by

amendment."). Therefore, the Court dismisses the portion of Plaintiff's Bane Act claim that is barred by §§ 815.2(b) and 821.6 without leave to amend.

### b. Failure to State a Claim

The Court cannot conclude, however, that California Government Code § 821.6 bars the portion of Plaintiff's Bane Act claim against ADA Moore that is based on ADA Moore's alleged failure to return Plaintiff's property. As discussed above, Plaintiff alleges that ADA Moore refused to Plaintiff's camera and computer even after (1) "the charge against [P]laintiff was dismissed by a Superior Court Judge"; and (2) "[t]he judge ordered that [ADA Moore] return all of [P]laintiff's possessions that had been seized." FAC ¶ 17. In light of these allegations, the Court cannot conclude that ADA Moore's retention of Plaintiff's property was "causally connected to the investigation and prosecution" of Plaintiff. *Cty. of L.A.*, 181 Cal. App. 4th at 230.

However, the Court agrees with the County Defendants that Plaintiff's FAC fails to state a Bane Act claim based on ADA Moore's alleged failure to return Plaintiff's property. As discussed above, in order to state a claim under the Bane Act, a plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen*, 234 Cal. App. 4th at 67. Although Plaintiff's FAC appears to assert that ADA Moore violated Plaintiff's Fourth Amendment rights by refusing to return Plaintiff's property, Plaintiff's FAC contains no allegations that suggest that ADA Moore's physical retention of Plaintiff's property was achieved "by threats, intimidation, or coercion." *Id.* As a result, Plaintiff has failed to state a cause of action under the Bane Act based on ADA Moore's failure to return Plaintiff's property.

Moreover, the Court notes that even if Plaintiff successfully states a cause of action under the Bane Act based on ADA Moore's prolonged retention of Plaintiff's property, that cause of action would still be subject to dismissal to the extent that it seeks damages because there is no indication in the FAC that Plaintiff presented a written claim for damages under the Bane Act to the County before bringing the instant lawsuit. "In general, plaintiffs are required to file a written

23

claim within one year of the accrual of their cause of action under the Government Claims Act, California Government Code § 911.2, as a condition precedent to filing any civil action [for damages] under the . . . Bane Act[]." *Jefferson v. Superior Court of Cal.*, 2008 WL 11336497, *9 (C.D. Cal. Oct. 16, 2008); *see also* Cal. Gov't Code § 905 (stating that "[t]here shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) all claims for money or damages against local public entities" except in certain circumstances not applicable to the instant case). Thus, because Plaintiff's FAC contains no indication that Plaintiff presented a written claim for damages to the County, Plaintiff's Bane Act cause of action against the County—insofar as it seeks damages—is barred by the Government Claims Act. Further, California Government Code § 950.2 states that "a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred" by the Government Claims Act. As a result, Plaintiff's Bane Act cause of action for damages against ADA Moore, who is alleged to be a public employee of the County, is also barred.

Accordingly, the Court GRANTS the County Defendants' motion to dismiss the portion of Plaintiff's Bane Act claim that is based on ADA Moore's retention of Plaintiff's property. However, the Court provides leave to amend because Plaintiff may be able to allege sufficient facts to state a Bane Act claim against the County Defendants. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

**B. City Defendants' Motion**

In their motion, the City Defendants move to dismiss (1) the second cause of action, which is for "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; and (2) the fifth cause of action,

24

Case No. 17-CV-04470-LHK
ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS; GRANTING CITY DEFENDANTS' MOTION TO DISMISS; AND DENYING CITY DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT

United States District Court
Northern District of California

which is for violation of the Bane Act. City Mot. at 5–7. Further, the City Defendants move for a more definite statement under Federal Rule of Civil Procedure 12(e) because "Plaintiff's allegations against City Officers Anderson and Moreno are so vague and ambiguous that City Defendants cannot reasonably respond to Plaintiff's claims against them." *Id.* at 8.

The Court first addresses Plaintiff's second cause of action for "conspiracy to seize the person and deny substantive due process" as it pertains to the City Defendants. Then, the Court addresses Plaintiff's Bane Act claim against the City Defendants. Finally, the Court addresses the City Defendants' motion for a more definite statement.

### 1. Plaintiff's Second Cause of Action Against the City Defendants

Although Plaintiff's FAC states that his second cause of action is for "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments, FAC at 5, the Court notes that the FAC does not specify which of the City Defendants' actions amount to "conspiracy to seize the person and deny substantive due process." However, the Court deduces that Plaintiff's second cause of action for "conspiracy to seize the person and deny substantive due process" against the City Defendants must be based on the City Officers' alleged participation in a conspiracy with ADA Moore "to present false incriminating evidence to the court" in the form of a "false and misleading probable cause statement . . . requesting a search warrant for [P]laintiff's home." *Id.* ¶¶ 13, 15.

The Court first addresses Plaintiff's second cause of action as it pertains to the City Officers. Then, the Court addresses Plaintiff's second cause of action as it pertains to the City.

### a. Second Cause of Action Against the City Officers

In the City Defendants' motion to dismiss, the City Officers argue that the allegations underlying Plaintiff's second cause of action are vague and conclusory, and are therefore "insufficient to state a claim for conspiracy against the City Defendants." City Mot. at 5–6.

In his opposition to the City Defendants' motion to dismiss, Plaintiff does not appear to oppose the City Officers' motion to dismiss Plaintiff's second cause of action. Instead, Plaintiff

25

states that he "is aware that the facts in the [FAC] are sparse" and "requests that he be allowed to" amend his complaint in order to "flesh[] out the details of what occurred to [P]laintiff" at the hands of the City Defendants. Opp. City at 1–2. For the reasons stated below, the Court agrees with the City Officers that Plaintiff's second cause of action is insufficiently pled.

"To state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012). "To plead a claim of conspiracy under § 1983, plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights." *Id.* (citing *Miller v. California*, 355 F.3d 1172, 1177 n.3 (9th Cir. 2004), *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998), and *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)). Thus, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). In other words, "[t]o state a claim for conspiracy to violate one's constitutional rights under § 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989).

Plaintiff's FAC falls well short of alleging sufficient facts to state a conspiracy claim under § 1983. In support of Plaintiff's second cause of action for "conspiracy to seize the person and deny substantive due process," the FAC states only that (1) "Plaintiff is informed and believes and alleges thereon that [the City Officers] conspired with [ADA Moore] to present false incriminating evidence to the court"; and (2) the City Officers and ADA Moore "presented a false and misleading probable cause statement to a judge requesting a search warrant for plaintiff's home." FAC ¶¶ 13, 15. Thus, Plaintiff's FAC offers no "specific facts to support the existence of the claimed conspiracy." *Burns*, 883 F.2d at 821. Plaintiff's conclusory statement that the City Officers "conspired with [ADA Moore] to present false incriminating evidence to the court" is

26

plainly insufficient to support Plaintiff's conspiracy claim.  *See Davis*, 901 F. Supp. 2d at 1217

("A conclusory statement that all the Defendants conspired to force Davis to purchase oil from

their vendor is insufficient.").  Moreover, Plaintiff's FAC fails to describe why the "probable

cause statement" that the City Officers allegedly conspired to present to the judge was "false and

misleading," FAC ¶ 15, and also fails to identify any overt act done by any of the City Officers to

further the alleged conspiracy.

Accordingly, the Court GRANTS the City Officers' motion to dismiss Plaintiff's second

cause of action as it pertains to the City Officers.  The Court provides leave to amend because

Plaintiff may be able to allege sufficient facts to state a claim for "conspiracy to seize the person

and deny substantive due process" pursuant to the Fourth and Fourteenth Amendments against the

City Officers.  *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to

amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

other facts" (internal quotation marks omitted)).

### b.  Second Cause of Action Against the City

As explained above, a complaint that "lump[s] together . . . multiple defendants in one

broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)."  *Geb-Probe*, 926 F.

Supp. at 961 (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  In the

instant case, although Plaintiff asserts his second cause of action against "All Defendants," FAC at

5, the allegations contained in or referenced by Plaintiff's second cause of action focus exclusively

on actions taken by ADA Moore, who is not alleged to be an agent or employee of the City, and

by the City Officers, who are alleged to be employees of the City.  *See id.* ¶¶ 8–10, 13, 15, 17.

Thus, the only allegations that tie the City to the second cause of action focus exclusively on the

actions of certain employees of the City, which, as explained above, is significant because a city

cannot be sued under a theory of respondeat superior for injuries inflicted by its employees or

agents.  *Monell*, 436 U.S. at 691.  Further, although a city can be sued directly under § 1983 based

on the actions of a city employee where those actions "implement[] or execute[] a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by" the city, *id.*at 690, Plaintiff's second cause of action contains no allegations suggesting that the actions taken by the City Officers "implement[ed] or execute[d]" City policy. *See* FAC ¶¶ 8–10, 13, 15, 17. However, such allegations *are* contained in Plaintiff's fourth cause of action, which is a *Monell* claim against the City. *See* FAC ¶¶ 32–34.

Thus, as with the County, *see supra* Section III.A.1.c, Plaintiff's second cause of action appears to lump the City with other defendants in a way that violates the notice requirement of Federal Rule of Civil Procedure 8(a)(2). Once again, because the Court must construe the FAC in the light most favorable to Plaintiff, and because Plaintiff already raises a *Monell* claim against the City in his fourth cause of action, the Court reads the FAC to include the City as a defendant in Plaintiff's fourth cause of action, but not in Plaintiff's second cause of action. If plaintiff wishes to assert his second cause of action against the City as a claim that is separate from his fourth cause of action, Plaintiff must do so in a second amended complaint in a way that complies with both Rule 8 and *Monell*.

### 2. Plaintiff's Bane Act Claim Against the City Defendants

As discussed above, in order to state a claim under the Bane Act, a plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen*, 234 Cal. App. 4th at 67. Although Plaintiff asserts his Bane Act claim against "All Defendants," FAC at 8, Plaintiff's FAC does not specify which of the City Defendants' actions allegedly violated the Bane Act. However, construing the FAC broadly and in Plaintiff's favor, the Court deduces that Plaintiff's Bane Act claim against the City Defendants can be based on at most two aspects of the City Officers' alleged conduct: (1) the City Officers' pre-arrest search of Plaintiff, pre-arrest seizure of Plaintiff's camera, and eventual "false arrest" and incarceration of Plaintiff, *see* FAC ¶¶ 8,10; and (2) the City Officers' alleged participation in a conspiracy with ADA Moore "to present false incriminating evidence to the court" in the form of a "false and misleading

28

probable cause statement . . . requesting a search warrant for [P]laintiff's home." *Id.* ¶¶ 13, 15.

The City Defendants argue that Plaintiff's FAC fails to state a Bane Act claim against the City Defendants. City Mot. at 7. For the reasons stated below, the Court agrees with the City Defendants. The Court first addresses the portion of Plaintiff's Bane Act claim that is based on the City Officers' alleged participation in a conspiracy to present a "false and misleading probable cause statement" in support of a warrant to search Plaintiff's home. FAC ¶ 15. Then, the Court addresses the portion of Plaintiff's Bane Act claim that is based on Plaintiff's allegations that the City Officers subjected Plaintiff to an unlawful search and seizure.

### a. Conspiracy

As explained above, in order to state a claim under the Bane Act, a plaintiff must allege facts that plausibly demonstrate both (1) a violation of a "state or federal constitutional or legal right"; and (2) that the violation was achieved through "threats, intimidation, or coercion." *Allen*, 234 Cal. App. 4th at 67. To the extent that Plaintiff's Bane Act claim is based on the alleged conspiracy between the City Officers and ADA Moore to present false and misleading evidence against Plaintiff, it falls short of both of these requirements.

First, as the Court concluded above, Plaintiff's FAC fails to state a claim for conspiracy to violate Plaintiff's constitutional rights based on the purported conspiracy between the City Officers and ADA Moore. *See supra* Section III.B.1.a. Thus, for purposes of the Bane Act, Plaintiff's FAC likewise fails to sufficiently allege a violation of Plaintiff's "state or federal constitutional or legal right[s]" based on the alleged conspiracy. *Allen*, 234 Cal. App. 4th at 67.

Second, Plaintiff's FAC contains no facts to suggest that the City Officers achieved or furthered their alleged conspiracy by threatening, intimidating, or coercing Plaintiff in any way. *See id.* Indeed, as the Court observed above, the FAC fails to identify *any* overt act done by any of the City Officers to further the alleged conspiracy. *See supra* Section III.B.1.a.

Accordingly, the Court GRANTS the City Defendants' motion to dismiss the portion of Plaintiff's Bane Act claim that is based on the alleged conspiracy between the City Officers and

29

ADA Moore to present false and misleading evidence against Plaintiff. The Court provides leave to amend because Plaintiff may be able to allege sufficient facts to state a Bane Act claim based on the alleged conspiracy. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### b. Unlawful Search and Seizure

Plaintiff's Bane Act claim against the City Defendants can also be construed to be based on the City Officers' pre-arrest search of Plaintiff, pre-arrest seizure of Plaintiff's camera, and eventual "false arrest" and incarceration of Plaintiff. *See* FAC ¶¶ 8, 10. In their motion to dismiss, the City Defendants argue that although searches and seizures by police officers inherently involve some degree of "threats, intimidation, or coercion," Plaintiff must allege threats, intimidation, or coercion *beyond* that which is inherent in a search or seizure in order to state a Bane Act claim based on that search or seizure. City Mot. at 7.

The City Defendants' position is supported by at least two California Court of Appeal decisions. Specifically, in *Allen*, the California Court of Appeal held that the Bane Act "requires threats, coercion, or intimidation in addition to a constitutional violation, and the plaintiff cannot graft one act onto two distinct burdens." 234 Cal. App. 4th at 68 (citing *Santiago v. Keyes*, 890 F. Supp. 2d 149, 155–56 (D. Mass. 2012)). Further, the *Allen* Court based its holding in part on an earlier California Court of Appeal decision, *Shoyoye v. County of Los Angeles*, which held that "where coercion is inherent in the constitutional violation alleged," the Bane Act "requires a showing of coercion independent from the coercion inherent in" the constitutional violation. 203 Cal. App. 4th 947, 959 (2012). Moreover, in *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015), the Ninth Circuit cited both *Allen* and *Shoyoye* in support of its conclusion that under California law, "a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act." *Id.* at 1196.

However, in his opposition to the City Defendants' motion to dismiss, Plaintiff counters

30

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS; GRANTING CITY DEFENDANTS' MOTION TO DISMISS; AND DENYING CITY DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT

the City Defendants' assertion by pointing to *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017). *Cornell* is a more recent California Court of Appeal decision that explicitly disagrees with the principle, first set forth in *Shoyoye*, that "where coercion is inherent in the constitutional violation alleged," a plaintiff must allege "coercion independent from the coercion inherent in" the constitutional violation in order to state a claim under the Bane Act. 203 Cal. App. 4th at 959. Specifically, in *Cornell*, the California Court of Appeal "acknowledge[d] that some courts have read *Shoyoye* as having announced 'independence from inherent coercion' as a requisite element of all [Bane Act] claims alleging search-and-seizure violations," but concluded that "those courts misread the statute." 17 Cal. App. 5th at 799. The *Cornell* court then explained that

> By its plain terms, [the Bane Act] proscribes any "interference with" or attempted "interference with" protected rights carried out "by threat, intimidation or coercion." Nothing in the text of the statute requires that the offending "threat, intimidation or coercion" be "independent" from the constitutional violation alleged. Indeed, if the words of the statute are given their plain meaning, the required "threat, intimidation or coercion" can never be "independent" from the underlying violation or attempted violation of rights, because this element of fear-inducing conduct is simply the means of accomplishing the offending deed (the "interference" or "attempted interference"). That is clear from the structure of the statute, which reads, "If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion," a private action for redress is available.

*Id.* at 799–800 (quoting Cal. Civ. Code § 52.1). Finally, the *Cornell* court went on to hold that when a plaintiff premises his Bane Act claim on a constitutional violation that inherently involves some degree of threat, intimidation, or coercion, the plaintiff need not prove any coercion beyond the coercion inherent in the constitutional violation. *Id.* at 801–02. Instead, the plaintiff must establish that the person who violated the plaintiff's constitutional rights "had a specific intent" to do so. *Id.* at 801. Thus, a plaintiff who premises his Bane Act claim on an allegedly unlawful search and arrest by a police officer must demonstrate that the arresting officer "had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* Put another way,

31

that plaintiff must establish that the arresting officer searched and arrested the plaintiff "with the particular purpose of depriving [the plaintiff] of his enjoyment of the interests protected by" the Fourth Amendment right to be free of unreasonable seizure. *Id.* at 803.

Although the Ninth Circuit's decision in *Lyall* applied *Shoyoye*'s rule that the coercion inherent in a constitutional violation is not sufficient to support a Bane Act claim, *Lyall*, 807 F.3d at 1195, this Court is not required to follow *Lyall* because a Ninth Circuit panel's interpretation of state law is "only binding in the absence of any subsequent indication from the California courts that [the Ninth Circuit panel's] interpretation was incorrect." *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). *Cornell* provides such a "subsequent indication" that *Lyall*'s "interpretation [of the Bane Act] was incorrect." *Id.* Indeed, *Cornell* even cites *Lyall* as an example of one of the decisions that "misread" the Bane Act. *Cornell*, 17 Cal. App. 5th at 799 & n.28. Because *Cornell* explicitly conflicts with *Shoyoye* (and by extension, *Lyall*), and because the California Supreme Court has not spoken on this issue, the Court must ordinarily "use [its] best judgment to predict" how the California Supreme Court would decide the issue. *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997) (citation omitted). Further, the Court notes that another court in this district recently faced this exact conundrum and concluded "that the recent *Cornell* decision is more persuasive than *Shoyoye* and its progeny as to the coercion element of the Bane Act and better predicts how the California Supreme Court would interpret the statute." *Watkins v. City of Oakland*, 2018 WL 574906, *13 (N.D. Cal. Jan. 26, 2018).

However, in the instant case, the Court finds that it need not decide whether *Shoyoye* or *Cornell* "better predicts how the California Supreme Court would interpret" the Bane Act. *Id.* This is because to the extent that Plaintiff's Bane Act claim is premised on the City Officers' search and seizure of Plaintiff and Plaintiff's camera, the claim fails under either standard. First, under *Shoyoye*, Plaintiff's claim fails because Plaintiff's FAC does not allege any "threats, intimidation, or coercion" beyond that which was inherent in the City Officers' allegedly unconstitutional search and seizure. *Allen*, 234 Cal. App. 4th at 67. Although Plaintiff's FAC

32

does allege that Plaintiff "was approached in an extremely belligerent manner" by City Officers Vasquez and Zamora immediately before the search and seizure, FAC ¶ 8, under California law, such a conclusory allegation cannot support a Bane Act claim. *See Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 395 (2017) ("Julian alleged without explanation that the police defendants 'engaged in tactics to scare' her. 'Conclusory allegations of forcible and coercive interference with plaintiffs' constitutional rights are inadequate to state a cause of action for a violation of [the Bane Act].'" (internal quotation marks omitted and alteration adopted)).

Second, under *Cornell*, Plaintiff's claim fails because Plaintiff's FAC does not sufficiently allege that the City Officers searched, arrested, and incarcerated Plaintiff "with the particular purpose of depriving [Plaintiff] of his enjoyment of the interests protected by" the Fourth Amendment. *Cornell*, 17 Cal. App. 5th at 803. In *Cornell*, the California Court of Appeal held that the plaintiff met this "specific intent standard" because he submitted ample evidence that "the harm he suffered from [his] arrest—his job loss, in particular—was inflicted out of spite." *Id.* at 804. Specifically, the *Cornell* court observed that, based on the evidence presented at trial, "a rational jury could have concluded" that when the officers who arrested the plaintiff "realized their error, they doubled-down on it, knowing they were inflicting grievous injury on their prisoner." *Id.*

Similarly, the *Watkins* court found that allegations that certain officers "arrested [the plaintiff] without probable cause" and "knowingly falsified the only evidence suggesting that [the plaintiff] had engaged in criminal conduct" were sufficient to meet *Cornell*'s specific intent standard at the pleading stage. 2018 WL 574906 at *13. In contrast, Plaintiff's FAC does not sufficiently allege facts that plausibly suggest that the City Officers acted "with the particular purpose" of violating Plaintiff's constitutional rights. *Cornell*, 17 Cal. App. 5th at 803. Unlike in *Cornell*, Plaintiff's FAC does not allege sufficient facts to suggest that the City Officers specifically intended to harm Plaintiff "out of spite." *Id.* at 804. Although Plaintiff's FAC contains allegations that the City Officers conspired to present false and misleading evidence

33

against Plaintiff to a court, *see* FAC ¶¶ 13, 15, which are similar to what was alleged in *Watkins*, *see* 2018 WL 574906 at *13, as the Court explained above, those allegations are conclusory, fail to describe why the evidence that the City Officers allegedly conspired to present to the court was false and misleading, and fail to identify any overt acts done by any of the City Officers to further the conspiracy. *See supra* Section III.B.1.a. As a result, those allegations are not sufficient to satisfy *Cornell*'s specific intent standard at the pleading stage.

Accordingly, the Court GRANTS the City Defendants' motion to dismiss the portion of Plaintiff's Bane Act claim that is based on the City Officers' pre-arrest search of Plaintiff, pre-arrest seizure of Plaintiff's camera, and eventual "false arrest" and incarceration of Plaintiff. The Court provides leave to amend because Plaintiff may be able to allege sufficient facts to state such a Bane Act claim against the City Defendants. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 3. Motion for a More Definite Statement

In their motion, the City Defendants argue that they are entitled to a more definite statement under Federal Rule of Civil Procedure 12(e) because "Plaintiff's allegations as to City Officers Anderson and Moreno's involvement is [*sic*] vague and ambiguous, simply stating that they were 'involved in [Plaintiff's] false arrest and incarceration.'" City Mot. at 8 (quoting FAC ¶ 10). However, a district court may grant a motion for a more definite statement under Rule 12(e) only if a pleading is "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). For example, a Rule 12(e) motion may be granted "where the complaint is so general that ambiguity arises in determining the nature of the claim." *Sagan*, 874 F. Supp. at 1077. As such, Rule 12(e) motions are generally "viewed with disfavor and rarely granted[.]" *Alia Corp.*, 842 F. Supp. 2d at 1250.

Although Plaintiff's FAC contains sparse details regarding Plaintiff's claims against Officers Anderson and Moreno, the Court cannot conclude that the FAC is "so vague or

ambiguous" that Officers Anderson and Moreno are not able to "reasonably prepare a response" to Plaintiff's FAC. Fed. R. Civ. P. 12(e). Based on the FAC, it is clear that Officers Anderson and Moreno are being sued for Fourth and Fourteenth Amendment violations based on whatever involvement they had in both the arrest and incarceration of Plaintiff and the presentation of evidence against Plaintiff to the state court (if any). Thus, Plaintiff's allegations regarding Officers Anderson and Moreno's actions, though sparse, do not render the FAC "so general that ambiguity arises in determining the nature of the claim[s]" against Officers Anderson and Moreno. *Sagan*, 874 F. Supp. at 1077. Accordingly, the Court DENIES the City Defendants' motion for a more definite statement.

However, the Court notes that Plaintiff's sparse allegations have already led the Court to dismiss two of the three causes of action that Plaintiff asserts against Officers Anderson and Moreno—specifically, Plaintiff's second and fifth causes of action. Further, the Court notes that had Officers Anderson and Moreno moved to dismiss Plaintiff's first cause of action, Plaintiff's sparse allegations regarding Officers Anderson and Moreno would have justified granting that motion. As a result, Plaintiff is now on notice that the factual allegations in the FAC regarding Officers Anderson and Moreno, although not sufficiently lacking to justify a more definite statement, will result in dismissal of all of Plaintiff's claims against Officers Anderson and Moreno with prejudice if Plaintiff fails to allege additional relevant facts regarding their conduct.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the County Defendants' motion to dismiss, GRANTS the City Defendants' motion to dismiss, and DENIES the City Defendants' motion for a more definite statement. In particular:

1. ADA Moore's motion to dismiss Plaintiff's first cause of action, for "unlawful search, seizure, arrest" in violation of the Fourth Amendment and pursuant to 42 U.S.C. § 1983, is GRANTED with prejudice to the extent Plaintiff's cause of action is premised on ADA Moore's alleged continued prosecution of Plaintiff without sufficient

35

evidence, and DENIED to the extent Plaintiff's cause of action is premised on ADA Moore's alleged failure to return Plaintiff's property.

2. ADA Moore's motion to dismiss Plaintiff's second cause of action, for "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments and pursuant to 42 U.S.C. § 1983, is GRANTED with prejudice.

3. The City Officers' motion to dismiss Plaintiff's second cause of action, for "conspiracy to seize the person and deny substantive due process" in violation of the Fourth and Fourteenth Amendments and pursuant to 42 U.S.C. § 1983, is GRANTED with leave to amend.

4. The County's motion to dismiss Plaintiff's third cause of action, for *Monell* liability pursuant to § 1983, is GRANTED with leave to amend.

5. The County Defendants' motion to dismiss Plaintiff's fifth cause of action, for violation of the Bane Act, Cal. Gov't Code § 52.1, is GRANTED with prejudice to the extent Plaintiff's cause of action is premised on either ADA Moore's alleged continued prosecution of Plaintiff without sufficient evidence or ADA Moore's alleged participation in a conspiracy to present false and misleading evidence to the court, and GRANTED with leave to amend to the extent Plaintiff's cause of action is premised on ADA Moore's alleged failure to return Plaintiff's property.

6. The City Defendants' motion to dismiss Plaintiff's fifth cause of action, for violation of the Bane Act, Cal. Gov't Code § 52.1, is GRANTED with leave to amend.

7. The City Defendants' motion for a more definite statement is DENIED.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims or theories. Plaintiffs may not add new causes of actions or

36

parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: February 27, 2018

LUCY H. KOH
United States District Judge

Case No. 17-CV-04470-LHK
ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS;
GRANTING CITY DEFENDANTS' MOTION TO DISMISS; AND DENYING CITY DEFENDANTS' MOTION
FOR A MORE DEFINITE STATEMENT